UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KIRK P. DIXON,

      Petitioner,

v.                                    Case No. 3:20-cv-423-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

## ORDER

### I. Status

Petitioner Kirk P. Dixon, an inmate of the Florida penal system, initiated this action on April 17, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Dixon proceeds on a Third Amended Petition (Doc. 19) with attachments (Docs. 19-1 through 19-7), filed on February 15, 2023. In the Third Amended Petition, Dixon challenges a 2005 state court (Columbia County, Florida) judgment of conviction for second-degree murder. He raises nine grounds for relief. See Third Amended Petition at 5-17. Respondents have submitted a memorandum in opposition to the

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Petition, arguing that the Petition is untimely. See Response as Motion to Dismiss Third Amended Petition as Untimely and Unexhausted and Incorporated Memorandum of Law (Response; Doc. 23). They also submitted exhibits.[2] See Docs. 13-1 through 13-14. Dixon filed a brief in reply. See Reply (Doc. 26). This action is ripe for review.

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2] Respondents rely on the exhibits attached to their original response.

>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III. Analysis

Respondents contend that Dixon has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). Response at 1. Dixon concedes that the Petition is untimely filed. Third Amended Petition at 19. Nevertheless, he asks the Court to address the merits of his claims, arguing that he is actually innocent of the crimes, and a miscarriage of justice has occurred. Id. The following procedural history is relevant to the one-year limitations issue. On January 21, 2004, the State of Florida charged Dixon by

3

indictment with first-degree felony murder. State of Florida v. Kirk Patrick Dixon, No. 2004-CF-36 (Fla. 3d Cir. Ct.). Dixon proceeded to a trial, and, on August 11, 2005, a jury found him guilty of second-degree murder, a lesser included offense. Id. On August 23, 2005, the circuit court sentenced Dixon to a thirty-year term of imprisonment. Doc. 13-1. The First District Court of Appeal (First DCA) per curiam affirmed Dixon's conviction and sentence without a written opinion on November 7, 2006, Doc. 13-2 at 3, and issued the mandate on November 27, 2006, id. at 2.

As Dixon's conviction and sentence became final after the effective date of AEDPA, his Petition is subject to the one-year limitations period. See 28 U.S.C. § 2244(d)(1). Because Florida law does not permit the Florida Supreme Court to review an affirmance without an opinion, see Florida Rule of Appellate Procedure 9.030(a)(2), Dixon's conviction and sentence became final when the time for filing a petition for certiorari review in the United States Supreme Court expired. See Chamblee v. Florida, 905 F.3d 1192, 1198 (11th Cir. 2018). The time for Dixon to file a petition for writ of certiorari expired on Monday, February 5, 2007 (ninety days after November 7, 2006). See Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006) (affording the 90-day grace period to a Florida petitioner whose conviction was affirmed by a

court of appeal in an unelaborated per curiam decision). Accordingly, Dixon had until February 5, 2008, to file a federal habeas petition. He did not file his initial Petition until April 17, 2020. Therefore, the Petition is due to be dismissed as untimely unless he can avail himself of the statutory provisions which extend or toll the limitations period.

The one-year limitations period began to run on February 6, 2007, and ran for 283 days until November 16, 2007, when Dixon filed a pro se state petition for writ of habeas corpus. Doc. 13-4 at 6-15. On February 8, 2008, the First DCA denied the petition on the merits, id. at 2, and, on April 11, 2008, denied the motion for rehearing, id. at 1. The one-year limitations period began to run again the next day, April 12, 2008, and ran for 82 days until it expired on Wednesday, July 2, 2008.[3] Dixon filed his initial Petition on April 17, 2020. Given the record, Dixon's Petition is untimely filed and due to be dismissed unless he can establish that equitable tolling of the statute of limitations is warranted.

---

[3] The record also includes numerous postconviction motions and petitions that Dixon filed beginning on November 26, 2008. See Docs. 13-5, 13-8, 13-11 through 13-13. However, as he filed them after the statute of limitations had expired, they did not toll the limitations period. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (determining that a properly filed state court motion filed after the expiration of the federal limitations period for filing a petition for writ of habeas corpus cannot toll that period).

5

Dixon argues that he is actually innocent of second-degree murder, and a miscarriage of justice has occurred. Third Amended Petition at 19. Therefore, he contends the Court must address the grounds raised in his Third Amendment Petition on the merits. Id. In McQuiggin v. Perkins, 569 U.S. 383, 386 (2013), the United States Supreme Court held that a claim of actual innocence, if proven, provides an equitable exception to the one-year statute of limitations. The United States Supreme Court explained:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup[4] and House,[5] or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S. at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S., at 332, 115 S.Ct. 851.

---

[4] Schlup v. Delo, 513 U.S. 298 (1995).
[5] House v. Bell, 547 U.S. 518 (2006).

6

Id. at 386-87. "For purposes of the 'actual innocence' exception to a procedural bar, the petitioner must show 'factual innocence, not mere legal insufficiency.'" Justo v. Culliver, 317 F. App'x 878, 880-81 (11th Cir. 2008)[6] (quoting Bousley v. United States, 523 U.S. 614 (1998)); see Rozzelle v. Sec'y Fla. Dep't of Corr., 672 F.3d 1000, 1012-13 (11th Cir. 2012) (per curiam); see also Johnson v. Alabama, 256 F.3d 1156, 1171-72 (11th Cir. 2001) (finding claim of insufficient evidence at trial, without any new evidence, did not establish actual innocence to overcome procedural bar). Thus, to make a showing of actual innocence, Dixon must demonstrate "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.

Here, the Court finds that grounds one, three, four, five, six, and seven of the Third Amended Petition allege legal insufficiencies in the state court process. As such, they cannot provide a basis for avoiding the procedural bar. See Jones v. Warden, 683 F. App'x 799, 801 (11th Cir. 2017) ("Jones's argument that the state trial court lacked jurisdiction presents, at most, a claim of legal

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

innocence, not factual innocence, and does not excuse his failure to file his federal petition sooner.").

Additionally, the claims of factual innocence raised in the remaining grounds fail to satisfy the demanding Schlup standard. In ground two, Dixon argues that the prosecutor withheld part of the medical examiner's report, and the omitted portion constitutes new exculpatory evidence because it identifies the cause of the victim's death as cardiac arrhythmia rather than blunt force trauma. Third Amended Petition at 7. Dixon attaches the medical examiner's report as an exhibit to his Third Amended Petition. See generally Doc. 19-2. The report details numerous blunt force injuries that the victim sustained. Id. at 4-6. It also identifies the victim's cause of death as "Probable Cardiac Arrhythmia due to Blunt Head Trauma Superimposed Upon Pre-existing Heart Disease" and the manner of death as homicide. Id. at 8. Given the information contained in the report, the Court finds Dixon fails to satisfy his burden.

In grounds eight and nine of the Third Amended Petition, Dixon argues he is actually innocent based on photographs of his hands after the incident and notes of a 911 call. Third Amended Petition at 15-16; Docs. 19-4 through 19-5. According to Dixon, the photographs show he had no redness, swelling,

or bruises on his hands; therefore, he could not have hit the victim, his stepfather. Third Amended Petition at 15-16. As to the 911 call, Dixon alleges the notes state "son (the Petitioner) has not hit either the father or the comp." Id. at 15. Therefore, he avers that he could not have committed the crime of second-degree murder. Id.

Dixon does not point to any "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S at 324. Even assuming the photographs and notes constitute new evidence that was not available at the time of trial, the Court finds they are not reliable evidence of Dixon's innocence. The photographs include a time stamp, but not a date stamp. See Doc. 19-5. Without more context as to the date of the photographs or when bruises or swelling could reasonably be expected to appear, Dixon fails to satisfy the Schlup standard. The notes are similarly insufficient. While Dixon quotes part of the notes, it appears in context that the author confused the identities of Dixon and his stepfather. The notes state that the "son" has had brain surgery, and the incident "started over the father trying to take up the carpet." Doc. 19-4. However, as stated in Dixon's initial brief on appeal, evidence at trial demonstrated that, before the incident, Dixon was removing

the carpet in his mother and stepfather's house. Doc. 13-4 at 102, 107. And Dixon's stepfather previously had brain surgery. Id. at 102-03, 105. Accordingly, the Court finds the notes do not constitute new reliable evidence of Dixon's innocence. Because he has not shown a justifiable reason why the dictates of the one-year limitations period should not be applied to him, the Petition is untimely. As such, the Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).

## IV. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Dixon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dixon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

10

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Respondents' request to dismiss (Doc. 23) the case as untimely is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment dismissing this case with prejudice.

3. If Dixon appeals the dismissal of the case, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

11

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

    4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

    **DONE AND ORDERED** at Jacksonville, Florida, this 24th day of May, 2023.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-9 5/18
C:    Kirk P. Dixon, #543591
       Counsel of record

12